**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No.  07-34232

BENTLEY PORTER HENSLEY
KELLI ANN HENSLEY

Debtors

**MEMORANDUM ON TRUSTEE'S
OBJECTION TO DEBTORS' CLAIM OF EXEMPTIONS**


**APPEARANCES:**    LAW OFFICES OF MAYER & NEWTON
John P. Newton, Jr., Esq.
1111 Northshore Drive
Suite S-570
Knoxville, Tennessee  37919
Attorneys for Debtors

MOSTOLLER, STULBERG & WHITFIELD
Ann Mostoller, Esq.
136 South Illinois Avenue
Suite 104
Oak Ridge, Tennessee  37830
Attorneys for Trustee


**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Trustee's Objection to Debtor Husband's

Claim of Exemption Under T.C.A. § 26-2-103 and the Debtors' Claim of Exemption Under T.C.A.

§ 26-2-111(1)(A), (B), (C) filed by the Chapter 7 Trustee, Ann Mostoller, on February 8, 2008, and

on the Objection to Debtors' Claim of Exemption filed by the Trustee on March 21, 2008

(collectively, Objection to Exemptions).  The Trustee has raised separate issues concerning the

Debtors' claim to an exemption in certain personal property and to their claim to an exemption of

funds on deposit in their bank account.

The court held a preliminary hearing on March 20, 2008, and scheduled a trial for April 10,

2008.  Thereafter, the parties agreed that the Trustee's objection to the Debtors' personal property

exemption could be decided upon stipulations and briefs, but that disputed factual issues existed

regarding the Trustee's objection to the exemption claimed by the Debtors in their bank account and

that a trial would be required on these issues.  At the direction of the court, the parties filed an

Amended Stipulation[1] on July 14, 2008, stipulating to certain undisputed facts and to the

admissibility of the following exhibits:  (A) the Debtors' Amended Schedule B - Personal Property

filed on June 20, 2008; (B)  the Debtors' Amended Schedule C - Property Claimed As Exempt filed

on June 20, 2008; and (C)  Certificates of Title issued by the State of Tennessee identifying Bentley

P. Hensley as the registered owner of a 1998 Dodge Grand Caravan and a 1999 Ford Mustang.  On

June 25, 2008, the Debtors filed the Debtor's [sic] Brief in Opposition to Trustee's Objection to

---

[1] Stipulations were originally filed on April 22, 2008, containing facts and documents material to the Trustee's
objection on both the personal property and bank account exemption issues.  The Amended Stipulations, which now
supersede the original Stipulations, relate solely to the objection to the Debtors' personal property exemptions.  The court
will refer to the exhibits attached to the Amended Stipulation as "STIP. EX. __."

2

Debtor's Claim of Exemptions, and the Trustee filed a Brief in Support of Trustee's Objection to
Debtors' Claim of Exemption on June 27, 2008.

An evidentiary hearing on the Trustee's objection to the Debtors' exemption claimed in the
bank account was held on July 8, 2008. The record before the court consists of five stipulated
exhibits entered into evidence, along with the testimony of the Debtor, Bentley Porter Hensley.[2] The
court also takes judicial notice of material undisputed facts of record in the Debtors' bankruptcy case
file. *See* FED. R. EVID. 201.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (O) (2008).

**I**

On June 14, 2007, the Debtors deposited a $71,060.50 check payable to Bentley P. Hensley
from the Social Security Administration dated March 21, 2007, representing Mr. Hensley's social
security disability back pay, into their joint checking account at Regions Bank.[3] *See* COLL. TRIAL
EX. 1; COLL. TRIAL EX. 3. At the time this deposit was made, the balance in the Regions Bank
account was $3,403.69, all of which was attributable to prior social security benefits received by
Bentley Hensley, Kelli Hensley, and the Debtors' children.[4]

---

[2] The court will refer to all exhibits entered into the trial record as "TRIAL EX. ___."

[3] Mr. Hensley applied for social security disability benefits in July 2003, and was approved in January 2007,
for back pay and ongoing monthly payments. The Debtor, Kelli Hensley, and the Debtors' children also received back
pay totaling $44,234.00, which was deposited in the Regions Bank account on March 2, 2007. *See* COLL. TRIAL EX. 3.
At trial, Mr. Hensley testified that he did not deposit his $71,060.50 check, which was issued on March 21, 2007, for
three months out of fear that his creditors would execute upon it.

[4] The Regions Bank account was established by the Debtors in February 2007 with an initial deposit of
(continued...)

3

On June 18, 2007, a $40,000.00 check was drawn on the Regions Bank account by the Debtors and deposited into the "Regular Savings" account of Mr. Hensley's mother, Joann M. Hensley, at Suncoast Schools Federal Credit Union. *See* COLL. TRIAL EX. 2. The purpose of this transfer was two-fold: first, to allow the Debtors to earn a higher rate of interest than they were receiving on their Regions Bank account, and second, to place funds in Joann Hensley's name in order that she, together with the Debtors, might qualify for a loan to purchase a home in Florida where the Debtors and their children were located at the time. No additional deposits were made to the Debtors' Regions Bank account between June 14, 2007, and June 20, 2007, the date the $40,000.00 check cleared the account. *See* COLL. TRIAL EX. 1.

On June 18, 2007, the date the $40,000.00 deposit was made to Joann Hensley's Regular Savings account, the account had a balance of $7.46 and was earning 2.2% interest. COLL. TRIAL. EX. 2. On August 16, 2007, at the request of the Debtors, Joann Hensley transferred the $40,000.00 from her Regular Savings account to her Choice 55 Checking account and issued a $40,000.00 Share Draft, No. 1441, payable to the Debtors, which they deposited back into their Regions Bank account on August 21, 2007. A second Share Draft, No. 1440, in the amount of $105.00, was also issued by Joann Hensley to the Debtors and deposited to the Regions Bank account on the same day, August 21, 2007. This sum represented the interest earned on the $40,000.00 while on deposit in Joann Hensley's Regular Savings account. *See* COLL. TRIAL EX. 1; COLL. TRIAL EX. 2. No

---

[4](...continued)
$9,536.00, representing the proceeds of a $118.00 check and a $9,418.00 check issued to Mr. Hensley by the Social Security Administration. *See* COLL. TRIAL EX. 1. All other deposits to this account were, with the exception of a $707.52 gift from Mrs. Hensley's mother, from social security benefits attributable to the Debtor, his wife, and the Debtors' children.

additional deposits or withdrawals of any consequence were made by Joann Hensley into her savings account between June 18, 2007, and August 21, 2007.[5]

The Debtors filed the Voluntary Petition commencing their Chapter 7 bankruptcy case on December 6, 2007. The Debtors' Regions Bank statement ending December 13, 2007, evidences a beginning balance of $47,235.84 and an ending balance of $35,507.08. *See* COLL. TRIAL EX. 1.

In their Schedule B, originally filed on December 6, 2007, the Debtors jointly listed, among other things, cash on hand in the amount of $264.00, their checking account at Regions Bank with a balance of $37,051.00, with a notation that "All funds are from Social Security Disability Payments," household goods and furnishings collectively valued at $2,988.00, and two automobiles, a 1998 Dodge Grand Caravan (Caravan) and a 1999 Ford Mustang (Mustang), collectively valued at $6,750.00.

As material to the issues before the court, the Debtors collectively claimed as exempt in Schedule C the entire $37,051.00 bank account balance under Tennessee Code Annotated § 26-2-111(1)(A), (B), (C) (Supp. 2007) and, pursuant to Tennessee Code Annotated § 26-2-103 (2000), the $264.00 cash on hand, the Caravan and Mustang in the amount of $6,750.00, and the household furnishings in the amount of $80.00. The Trustee filed her initial Objection to Exemptions on February 8, 2008, on the grounds that the vehicles were not jointly owned, but were solely owned by Mr. Hensley, and that the Debtors were attempting to exempt property above the $4,000.00 statutory limit for personal property. She asserted her objection with respect to the

---

[5] Periodic "share transfers," totaling $150.00, were made from Joann Hensley's checking account into the savings account during this time. The court deems this sum de minimis to the point it need not be considered.

Regions Bank account on the basis that she could not ascertain if all of the funds in the account were entitled to exempt status.

On March 19, 2008, the Debtors filed their first Amended Schedules B and C and again listed the joint Regions Bank checking account with a $37,051.00 balance which they claimed, jointly, as fully exempt.  The Debtors listed cash on hand in the amount of $264.00, which they claimed exempt solely to Mrs. Hensley, and household furnishings valued at $2,988.00, which they also claimed exempt solely to Mrs. Hensley in the amount of $986.00.  With respect to the two vehicles, which the Debtors now bifurcated into individual values at $2,250.00 for the Caravan and $4,500.00 for the Mustang, they included a notation on Schedule C that each vehicle was "[t]itled in Husband's name only but used jointly."  The Caravan was claimed exempt solely by Mr. Hensley, to the extent of its scheduled value, $2,250.00, while, with respect to the Mustang, Mr. Hensley claimed $1,750.00 of the scheduled value as exempt and Mrs. Hensley claimed $2,750.00 of the scheduled value as exempt.[6]

The Trustee filed her second Objection to Exemptions on March 21, 2008, with respect to the March 19, 2008 Amended Schedule C, renewing her objection to the funds in the Regions Bank account on the grounds that she could not ascertain if they were entitled to exempt status, and arguing that the Debtors had claimed individual exemptions in the entire value of jointly owned property and that Mrs. Hensley had claimed exemptions in the Caravan and Mustang, which were both owned solely by Mr. Hensley.

---

[6] The Debtors also claimed as exempt clothing valued at $450.00 and costume jewelry and wedding rings valued at $5,000.00 pursuant to Tennessee Code Annotated § 26-2-104 (2000).  These exemptions are not at issue in this contested matter.

On April 9, 2008, the court entered a Scheduling Order with respect to the Trustee's personal property objection, outlining the issues as follows: (a) whether either the Husband or the Wife could claim an exemption in a jointly-filed case in assets titled solely to the other; and (2) whether the Debtors could exempt more than one-half (½) of the value of jointly owned property by one or the other Debtor in a joint filing.

On June 12, 2008, the court entered a Pre-Trial Order defining the issues material to the bank account exemption as follows: (1) whether or not the pre-petition transfer of funds received from Social Security Disability to an account other than one belonging to the Debtors causes the funds to lose their exempt status; (2) if the funds lose their exempt status, does the pre-petition transfer of the funds back into the possession of the Debtors prior to filing cure the loss of exempt status; and (3) are the funds on deposit in the Debtors' account at the time of filing and claimed as exempt traceable to a social security fund awarded to the Debtor.

The Debtors filed a second Amended Schedule B and Amended Schedule C on June 20, 2008, adding "42 U.S.C.A. § 407" as an additional statutory basis for exempting the $37,051.00 in their Regions Bank checking account, but otherwise claimed the same exemptions as the Amended Schedule C filed on March 19, 2008, which, as are relevant to the Trustee's Objection, are: (1) cash on hand in the amount of $264.00 claimed exempt by Mrs. Hensley; (2) household goods and furnishings in the amount of $986.00 claimed exempt by Mrs. Hensley; (3) the Caravan in the amount of $2,250.00 claimed exempt by Mr. Hensley; and (4) the Mustang with the amount of $1,750.00 claimed exempt by Mr. Hensley and $2,750.00 claimed exempt by Mrs. Hensley. TRIAL EX. 4; TRIAL EX. 5; STIP. EX. A; STIP. EX. B.

7

# II

The filing of the Debtors' bankruptcy petition created their bankruptcy estate, and all property and interests in property owned by them became property of the estate.  11 U.S.C. § 541 (2005).  Nevertheless, debtors may, by virtue of 11 U.S.C. § 522, exempt property interests as follows:

(b)(1)  Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection.  In joint cases filed under section 302 of this title . . ., one debtor may not elect to exempt property listed in paragraph (2) and the other debtor elect to exempt property listed in paragraph (3) of this subsection.  If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (2), where such election is permitted under the law of the jurisdiction where the case is filed.

(2)  Property listed in this paragraph is property that is specified under section (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

(3)  Property listed in this paragraph is—

(A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place; [and]

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law[.]

11 U.S.C. § 522 (2005).

8

Any party in interest may object to a debtor's claimed exemptions and bears the burden of proof that the exemptions were improperly claimed. FED. R. BANKR. P. 4003(b), (c). If an objecting party fails to establish, by a preponderance of the evidence, that an exemption was claimed improperly, the exemption retains its prima facie presumption of correctness and will stand. *In re Mann*, 201 B.R. 910, 915 (Bankr. E.D. Mich. 1996). Objections to exemptions must be filed "within 30 days after the meeting of creditors . . . is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." FED. R. BANKR. P. 4003(b)(1).

Exempted property "is subtracted from the bankruptcy estate and not distributed to creditors . . . [and ensures that a debtor] retains sufficient property to obtain a fresh start[.]" *In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003) (quoting *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 792 (E.D. Tenn. 1998)). As such, exemptions are determined as of the date upon which the bankruptcy case is commenced and are construed liberally in favor of debtors. *In re Nipper*, 243 B.R. 33, 35 (Bankr. E.D. Tenn. 1999). "If it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *In re Lichtenberger*, 337 B.R. 322, 324 (Bankr. C.D. Ill. 2006). In order to claim property as exempt, debtors must file a statement listing the property along with the amount of the claimed exemption and the statutory basis therefor. *See* FED. R. BANKR. P. 4003(a). Under § 522(b), the "opt out" provision, states are allowed to require debtors to use their exemptions rather than the federal exemptions enumerated in § 522(d). Tennessee has "opted out" of the federal exemptions, and

therefore, the Debtors in this case must use Tennessee's statutory exemptions[7] and any appropriate federal exemption other than § 522(d).

## A

The first issue is whether Mrs. Hensley may claim an exemption in the Mustang, which is used jointly by the Debtors but is titled solely to Mr. Hensley.   Tennessee allows a statutory exemption for personal property as follows:

> Personal property to the aggregate value of four thousand dollars ($4,000) debtor's equity interest shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee, and such person shall be entitled to this exemption without regard to the debtor's vocation or pursuit or to the ownership of the debtor's abode.  Such person may select for exemption the items of the owned and possessed personal property, including money and funds on deposit with a bank or other financial institution, up to the aggregate value of four thousand dollars ($4,000) debtor's equity interest.

---

[7]    **Exemptions for the purpose of bankruptcy.** — The personal property exemptions as provided for in this part, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate and the citizens of Tennessee, pursuant to section 522(b)(1), Public Law 95-598 known as the Bankruptcy Reform Act of 1978, Title 11 USC, section 522(b)(1), are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, 11 USC 522(d).

TENN. CODE ANN. § 26-2-112 (2000); *see also Rhodes v. Stewart*, 705 F.2d 159, 161-62 (6th Cir. 1983) (finding that Tennessee's "opt-out" statute is constitutional).

Section 522 was considerably impacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), which applies to all bankruptcy cases filed on and after October 17, 2005, by the expansion of § 522(b)'s pre-existing requirements concerning a debtor's domicile and the addition of language exempting qualifying retirement funds from property of a debtor's estate.  For the purposes of the "opt out" statute and the issues addressed in this contested matter, however, BAPCPA did not alter application of § 522(b) or render moot any of the prior case law concerning that subsection.  Accordingly, all statutes and cases relied upon by the court in making its determination in this contested matter were decided pre-BAPCPA but are nevertheless applicable to this BAPCPA case.

Tenn. Code Ann. § 26-2-103.  The Debtors argue that they use both the Caravan and Mustang jointly, and it is their intent that the vehicles be considered joint property, irrespective that Mr. Hensley is the only one listed on the title.

"When debtors file a joint petition, their 'estates are in legal effect separate or several' [and each] spouse can claim an exemption only in property from his or her separate estate." *Nipper*, 243 B.R. at 39 (quoting *In re Howard*, 6 B.R. 220, 222 (Bankr. S.D. Ohio 1980)).  Here, both parties have claimed a joint ownership interest in the Mustang and the Caravan, while Mr. Hensley is the acknowledged "registered owner."  Amd. Stip. at ¶ 2; Stip. Coll. Ex. C.  Nevertheless, "in Tennessee, a certificate of title is not conclusive evidence of automobile ownership."  *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn. 2001).

> To determine ownership of a vehicle, a trier-of-fact may consider and weigh evidence relating to (1) the circumstances surrounding the vehicle's purchase, (2) the registration of the vehicle, (3) all aspects of insuring the vehicle, (4) all parties' financial stake in the vehicle, (5) the actual possession of the vehicle, (6) the responsibility for bearing the expense of operating, maintaining, and licensing the vehicle, and (7) the ultimate right to control the vehicle, including the right to make major decisions concerning the vehicle such as its use and restrictions on its use or the sale or other disposition of the vehicle.

*Rivkin v. Postal*, No. M1999-01947-COA-R3-CV, 2001 Tenn. App. LEXIS 682, at *39-40 (Tenn. Ct. App. Sept. 14, 2001).  And while the parties have stipulated that the Mustang is titled only in Mr. Hensley's name, they have also stipulated that all property listed in Schedule B, as amended on June 20, 2008, was jointly owned by the Debtors as tenants by the entireties prior to filing their bankruptcy case.  Amd. Stip. at ¶¶ 2, 6; Stip. Coll. Ex. C.

"It is well-settled in [Tennessee] that personal property as well as realty may be owned by spouses [as tenants] by the entirety, *Grahl v. Davis*, 971 S.W.2d 373, 378 (Tenn. 1998) (citing *Griffin v. Prince*, 632 S.W.2d 532, 535 (Tenn. 1982)), a form of property ownership which is unique to married persons" in which there exists a right of survivorship in which "each spouse is seized of the whole or the entirety and not of a share, moiety, or divisible part" and ownership of the property, as a whole, fully vests in the surviving spouse upon the death of the other spouse. Because the Trustee and Debtor have stipulated that all property listed on the Debtors' Amended Schedule B, including the Mustang and the Caravan, was owned by the Debtors as tenants by the entireties, the court finds that the Debtors are co-owners of the vehicles, irrespective of the fact that the Certificates of Title reflect only Mr. Hensley as the "registered owner." As such, each Debtor is entitled to claim a personal property exemption pursuant to Tennessee Code Annotated § 26-2-103 in the Mustang and the Caravan.[8]

## B

The next issue is whether the Debtors may exempt more than one-half the value of jointly owned personal property under Tennessee Code Annotated § 26-2-103. As discussed, the parties

---

[8] This determination also comports with the following definition of "marital property" set forth in Tennessee Code Annotated § 36-4-121 (2005) concerning the distribution of assets in a divorce:

"Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

TENN. CODE ANN. § 36-4-121(b)(1)(A). While this definition is not determinative, *see* TENN. CODE ANN. § 36-4-121(b)(1)(F), it is instructive.

have stipulated that the Debtors own their personal property as tenants by the entireties.

Accordingly, they argue that because each of them is seized in the whole, they should be entitled to

divide the property as they choose in terms of claiming their exemptions.  On the other side, the

Trustee argues that assigning each Debtor with a one-half interest in the personal property is proper.

In support of their argument, the Debtors rely upon the determination in *In re Brannon*, 476

F.3d 170, 176-77 (3d Cir. 2007), that "a spouse's 'aggregate interest' in entireties property is [not]

only half of the value of the property" under § 522(d)(5).  The applicable state law in that case,

however, is Pennsylvania, which allows "a tenant [to] act on behalf of both spouses with respect to

the whole of the entireties property, so long as the other spouse does not object." *Brannon*, 476 F.3d

at 176.  The law in Tennessee is different.

> Under Tennessee law, when husband and wife hold property together, they are
> presumed to hold it as tenants by the entirety unless the documents which evidence
> their ownership indicate that the property is held separately. Under tenancy by the
> entirety, the husband and wife as a unit have the right to the current use and
> enjoyment of the property. As individuals, they each possess a right of survivorship:
> if one spouse dies, then the other spouse takes the property in fee simple absolute.
> Each spouse may convey his or her right of survivorship without the consent of the
> other. However, the husband and wife's present right to use and enjoy the property
> may be transferred only by consent of both the husband and the wife. Therefore, a
> third party, such as a lien creditor, may own one spouse's right of survivorship
> without the consent of the other spouse, but a third party may not own a present
> possessory interest in the property without the approval of both spouses. Accordingly,
> a creditor of only one spouse may execute a judgment against only that spouse's right
> of survivorship but not against the spouses' present possessory interest.

*Arango v. Third Nat'l Bank (In re Arango)*, 992 F.2d 611, 613 (6th Cir. 1993) (internal citations

omitted).

13

The parties did not cite to nor was the court able to find any cases concerning percentages for division of exemptions under Tennessee law; however, in other areas of the law where a valuation of property owned as tenants by the entireties is required, the rule is generally an "equal" one.[9]  This type of valuation of entireties property arises when one of the spouses dies and the property must be valued for taxation purposes.  In *Pierce v. Woods*, 597 S.W.2d 295 (1980), the appellant, a surviving widow, reported 50% of the value on property held by the entireties; however, the Tennessee Department of Revenue determined that the deceased husband earned 92% of the money in the marriage and taxed the property at that percentage.  The Tennessee Supreme Court reversed the determination, holding that there was "nothing in the statutory language to support the conclusion that 92% of the value of the property held as tenants by the entireties, rather than 50% thereof, should be subjected to taxation by virtue of the death of Mr. Pierce." *Pierce*, 597 S.W.2d at 297.[10]  The court expounded as follows:

---

[9] Valuation of the individual parties' ownership interest in entireties property differs from a division of marital property in divorce cases, which is governed by statute and requires the following:

> In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

TENN. CODE ANN. § 36-4-121(a)(1). Nevertheless, even "[i]n making an equitable division of property under this statute, there is a presumption that the *ownership* of the property is equal[,]" *Salisbury v. Salisbury*, 657 S.W.2d 761, 770 (Tenn. Ct. App. 1983) (emphasis added), and a trial court, which "has wide discretion in dividing the interest of the parties in marital property," must attempt "in every divorce case . . . to divide the parties' marital estate in a just and equitable manner." *Morton v. Morton*, 182 S.W.3d 821, 833 (Tenn. Ct. App. 2005) (quoting *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (citations omitted)).

[10] The statute in question was Tennessee Code Annotated § 30-1603, which stated that the value of property held jointly as tenants by the entireties for tax purposes was "[a] fractional part of the value of such property, to be determined by dividing the value of the entire property by the number of persons in whose joint names it was held[.]" *Pierce*, 597 S.W.2d at 297 (quoting TENN. CODE ANN. § 30-1603, amended 1980).  The current version of the statute provides that "[w]henever any property was held jointly by the decedent and one (1) or more persons as tenants by the entirety or otherwise, . . . the entire value of any such property shall be deemed to have been transferred from the

(continued...)

The word "belong" is defined in *The American Heritage Dictionary of the English Language* as follows: "To be the property or concern of." There is nothing in the record to show that any greater interest in the subject property "belonged to decedent" than belonged to the survivor, Mrs. Pierce. Indeed, when property is held by husband and wife as tenants by the entireties each owns an equal interest in the property; it is impossible for more than 50% of the value of such an estate to "belong" to the deceased spouse. *Robinson v. Trousdale County*, 516 S.W.2d 626 (1974).

. . . .

Since the number of persons holding an estate by the entireties is two in number, it is clear that 50%, and no more, of the value of property held as tenants by the entireties is to be included in the taxable estate of the decedent spouse.

. . . .

The taxing statute with which we deal does not define the taxable estate in terms of the amount contributed by the decedent toward its purchase price, as is true in the statutes of some jurisdictions, but, on the contrary, defines the estate in terms of the ownership interest vested in the decedent at the time of death.

. . . To say that 92% of the value of the property here held by Mr. [and] Mrs. Pierce as tenants by the entireties belonged to Mr. Pierce and only 8% to Mrs. Pierce is pure fiction and for the Court to determine tax liability in this case upon that basis is unwarranted by the statute and is unjust.

*Pierce*, 597 S.W.2d at 297-98; *see also Griffin*, 632 S.W.2d at 535 ("For many purposes, including taxation, it is frequently convenient to consider that the spouses each own fifty percent of property held by entirety, but this is not the legal theory of such ownership."); *Barry v. Woods*, 594 S.W.2d 687, 688 (Tenn. 1980) ("It is elementary that neither tenant by the entirety owns the property alone; both are owners, and the title or right of neither is superior to that of the other.").

---

[10](...continued)

decedent to the survivor or survivors, and such transfer shall be subject to the inheritance tax imposed by parts 3-5 of this chapter, except: (1) [w]here the decedent and the survivor are husband and wife at the death of the decedent, there shall be deducted one half (½) of the value of the taxable transfer[.]" TENN. CODE ANN. § 67-8-305(a)(1) (2006).

Moreover, although not addressing the precise issue raised here, the United States Bankruptcy Court for the Middle District of Tennessee examined the effect of a joint debtor's death on tenants by the entireties property and the surviving party's interest and exemptions therein. In *In re Crowell*, 53 B.R. 555 (Bankr. M.D. Tenn. 1985), the court overruled the chapter 7 trustee's objection to the surviving spouse's amended exemptions following the death of her co-debtor husband in one-half of the value of personal property she held jointly with her deceased husband as tenants by the entireties. *Crowell*, 53 B.R. at 556. The court held that she "held a survivorship interest in tenancy by the entirety property on the date her joint petition was filed[,] the value of the survivorship interest must be determined as of that date[,] . . . [and a]ccordingly, the debtor is entitled to exempt the value of her survivorship interest in the personal property, determined on the date of filing." *Crowell*, 53 B.R. at 559.

Here, there is nothing in the record to support the Debtors' division of the exemption in any manner other than one-half to each spouse. They have stipulated to owning the personal property jointly as tenants by the entireties. AMD. STIP. at ¶¶ 1, 6. There is no evidence attributing the $264.00 claimed as exempt entirely by Mrs. Hensley solely to her, just as there is nothing to indicate that the household goods and furnishings, listed by the Debtors as a living room suite, VCR, stereo, washer/dryer, refrigerator, two vacuum cleaners, television, DVD player, bedroom suite, kitchen utensils, and dishwasher are used by Mrs. Hensley rather than Mr. Hensley or that Mrs. Hensley uses the Caravan and Mustang a greater percentage than Mr. Hensley does. The court agrees with the conclusion of the Tennessee Supreme Court in *Pierce* that "[s]ince the number of persons holding an estate by the entireties is two in number, it is clear that 50%, and no more [or less], of the value

of property held as tenants by the entireties is to be included[,]" and the most equitable valuation of the jointly owned entireties property, for the purposes of the exemption statutes as in the taxation statute, is an equal division. Accordingly, it will be necessary for the Debtors to again amend their Schedule C to provide for an equal, one-half division of all jointly owned entireties personal property they wish to exempt up to the maximum $4,000.00 set forth in Tennessee Code Annotated § 26-2-103.

## C

The final issue is whether the pre-petition deposit of the social security disability funds into the savings account in the name of the Debtor's mother, Joann Hensley, for a period of two months caused the funds to lose their exempt status. Social security benefits are exempt under both state and federal law. Under Tennessee law, "[a debtor's right to receive [a] social security benefit] shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee[.]" TENN. CODE ANN. § 26-2-111(1)(A). Moreover, social security benefits are exempt under federal statute as follows:

> The right of any person to any future payment under this title [42 U.S.C. A. §§ 401 et seq.] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (2008).

The Supreme Court has interpreted 42 U.S.C. § 407(a) as "unambiguously rul[ing] out any attempt to attach Social Security benefits." *Bennett v. Arkansas*, 108 S. Ct. 1204, 1205 (1988). This

holds true irrespective of whether the funds have been transferred into a debtor's bank account. *See Philpott v. Essex County Welfare Bd.*, 93 S. Ct. 590, 592 (1973); *Porter v. Aetna Cas. & Sur. Co.*, 82 S. Ct. 1231, 1233 (1962). The exempt status continues so long as "the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments." *Porter*, 82 S. Ct. at 1233. This applies not only to subsequently received payments but also previously received payments as well. *See Huskey v. Asmann*, C.A. No. 168, 1998 Tenn. App. LEXIS 319, at *5-6 (Tenn. Ct. App. May 3, 1990).

In this case, the Trustee has objected to the Debtors' claimed exemption of the $37,051.00 on the basis that when they transferred the $40,000.00 from their Regions Bank account to Joann Hensley's savings account, the money lost its exempt status. While the court, again, finds no cases directly on point, other cases are persuasive and lead to the conclusion that the funds did not lose their exempt status when the Debtors deposited the funds to Joann Hensley's savings account in June 2007.

At trial, Mr. Hensley testified that he suffered an injury to his back in 1982, that progressively worsened over time, and in July 2003, he applied for social security disability benefits but was not approved until January 2007. Upon his approval, he learned that he was eligible for back pay and ongoing monthly payments, as were his wife and children, which they began receiving in February and March 2007. *See* COLL. TRIAL EX. 3. The Debtors deposited most of the funds received with the exception of a check dated March 21, 2007, in the amount of $71,060.50, which Mr. Hensley held until June 14, 2007, for fear of creditors taking it from his checking account. *See* COLL. TRIAL

EX. 1; COLL. TRIAL EX. 3.  Mr. Hensley testified that the entire source of funds in the Debtors'

Regions Bank account from its inception in February 2007, with the exception of a gift from Mrs.

Hensley's mother in the amount of $707.52 to purchase appliances, which was deposited on

October 30, 2007, was derived from social security disability benefits payable to the Debtors or their

children.[11]

On June 18, 2007, via check number 536, the Debtors withdrew $40,000.00 from their

checking account which was then deposited into Joann Hensley's savings account. *Compare* COLL.

TRIAL EX. 1 *with* COLL. TRIAL EX. 2.  These funds remained, untouched, in the savings account until

August 16, 2007, when Joann Hensley withdrew and returned the $40,000.00, plus $105.00 in

interest, to the Debtors via Share Draft numbers 1441 and 1440 on August 21, 2007.  *Compare*

COLL. TRIAL EX. 2 *with* COLL. TRIAL EX. 1.

The Court's choice of wording in its holding in *Porter* is instructive.  The Court held that

benefits retain their exempt status if they are readily available and have not been converted into a

permanent investment "regardless of the technicalities of title and other formalities." *Porter*, 82 S.

Ct. at 1233.  At the time the Debtors transferred the funds to Joann Hensley's account, they did so

with the intention of moving to Florida and purchasing a house together with her.  In order to qualify

for a mortgage loan, the Debtors, who were physically in Florida house-hunting with Joann Hensley,

transferred the funds into Joan Hensley's savings account, with the additional bonus of earning a

higher interest rate on their deposited funds.  The fact that a minimal amount of Joann Hensley's

---

[11] *See supra*, n.4.

19

money, $150.00,[12] went into the account during the two months the Debtors' money was in her account is irrelevant since social security benefits continue to be protected from execution even if they are commingled with other funds as long as they are readily traceable. *S&S Diversified Servs., LLC v. Taylor*, 897 F. Supp. 549, 552 (D. Wyo. 1995); *Moore v. Moore*, 214 B.R. 628, 631 (Bankr. D. Kan. 1997). Moreover, under the "first-in, first-out" approach, the Debtors' social security funds were easily traceable both into and out of Joann Hensley's account. *See Lichtenberger*, 337 B.R. at 324.

Also persuasive is a holding by the Tennessee Court of Appeals that funds in the amount of $3,750.00 being held by the Circuit Court Clerk for Shelby County, Tennessee, pursuant to a pre-judgment attachment was subject to personal exemption under Tennessee Code Annotated § 26-2-102. *See Archer v. Cherry*, 1985 Tenn. App. LEXIS 2980, at *7 (Tenn. Ct. App. July 5, 1985). In its determination, the court cited, with approval, *Forhand v. Forhand*, 187 S.W.2d 635, 636 (Tenn. Ct. App. 1945), which held that "the fact that the property [claimed as exempt] was in the hands of the Clerk and Master did not preclude the claim of exemption." In those cases, under the Tennessee exemption statutes, it was immaterial in whose hands the funds were being held because they were still owned by the respective debtors. The same holds true here.

### III

In summary, the court finds that the Debtors are each entitled to claim an equal, one-half exemption interest in all personal property owned as tenants by the entireties, including the Mustang

---

[12] *See supra*, n.5.

20

and Caravan that are titled only in Mr. Hensley's name, up to their individual $4,000.00 exemption

limits as allowed by Tennessee Code Annotated § 26-2-103.  Additionally, the balance of the funds

on deposit in the Debtors' checking account with Regions Bank when they commenced their

bankruptcy case, $37,051.00, is fully exempt under Tennessee Code Annotated § 26-2-111(1)(A)

and 42 U.S.C. § 407.

In accordance with the above, the Trustee's Objection to Exemptions will be sustained in part

and overruled in part.  The Debtors will be given fourteen days to further amend Schedule C to

conform to the court's ruling.

An order consistent with this Memorandum will be entered.

FILED:  August 12, 2008

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

21